

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 31, 2014**

_Barbara J. Houser_

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 11-37348-BJH |
| ELCOTEQ, INC., | § | (Chapter 7) |
| | § | |
| DEBTOR. | § | |

_____

| | | |
|---|---|---|
| ROBERT MILBANK, JR., CHAPTER 7 | § | ADV. PROC. NO. 14-03007-BJH |
| TRUSTEE, | § | |
| | § | RELATED TO DKT. NOS. 6 & 44 |
| PLAINTIFF, | § | |
| v. | § | |
| | § | |
| PHILIPS LIGHTING ELECTRONICS | § | |
| NORTH AMERICA, a division of PHILIPS | § | |
| ELECTRONICS NORTH AMERICA | § | |
| CORPORATION, and PHILIPS | § | |
| ELECTRONICS NORTH AMERICA | § | |
| CORPORATION, | § | |
| | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION AND ORDER

Robert Milbank, Jr., (the "**Trustee**") filed the original complaint in this adversary proceeding on January 30, 2014 against Philips Lighting Electronics North America and Philips Electronics North America Corporation (collectively, "**Philips**"). Dkt. No. 1. Before the Court are the Motion to Dismiss filed by Philips, Dkt. No. 6, and the Motion for Leave to Amend the Complaint filed by the Trustee, Dkt. No. 44. By its motion, Philips requested dismissal of this adversary proceeding under Federal Rule of Civil Procedure 12(b)(1) on the basis of international comity and dismissal of certain claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted, both as made applicable here by Federal Rule of Bankruptcy Procedure 7012. The Trustee's motion seeks leave to amend the complaint to drop several claims and add others. The Court heard argument on both motions on September 29, 2014 and conducted an evidentiary hearing limited to the question of international comity on October 14-16, 2014. These matters are now ripe for ruling.

## I.    BACKGROUND

The parties submitted considerable evidentiary material to the Court in connection with the question of international comity. Most of the key facts are not in dispute and are set forth below.

Prior to its bankruptcy filing, Elcoteq, Inc. carried out manufacturing operations in various international locations, including the city of Juarez in the state of Chihuahua, Mexico. Elcoteq, Inc. acquired the Juarez operation by a purchase agreement dated September 2, 2008 with Philips Electronics North America Corporation and its parent in the Netherlands. Defs.' Ex. 12. Philips continued to operate other manufacturing facilities in Juarez after the sale.

The Juarez facility purchased by Elcoteq, Inc. was a participant in the Mexican maquiladora (or maquila) program, allowing non-Mexican companies access to Mexican labor without incurring significant tax liability in Mexico. Elcoteq, Inc. operated a similar facility in

Monterey, Mexico under the same program. Pursuant to that program, Elcoteq, Inc. executed a Maquila Agreement, Defs.' Ex. 13, with PCE Mexicana, S.A. de C.V. ("**PCE**"), a Mexican corporation, on September 2, 2008. The Maquila Agreement provided for Elcoteq, Inc. to supply and own all of PCE's equipment and inventory and for Elcoteq, Inc. to pay PCE's operating costs plus a profit margin. Elcoteq, Inc. only owned 0.2% of PCE; Elcoteq Holdings, Inc. owned the remaining 99.8% along with 100% of the shares of Elcoteq, Inc. The parties do not dispute Elcoteq, Inc.'s ownership of the assets located at the PCE plant in Juarez (the "**Assets**") prior to the events described below.

On August 31, 2011 at 8:01 p.m., creditors of Elcoteq, Inc. filed an involuntary bankruptcy petition against it in the Western District of Texas (case no. 11-31675). While the involuntary case was pending, Elcoteq, Inc. filed a voluntary petition under chapter 7 of the Bankruptcy Code in the Northern District of Texas (case no. 11-36837). An order for relief was entered in the involuntary case on November 4, 2011. On November 16, 2011, the case was converted to a case under chapter 7 and transferred to the Northern District of Texas, where it was assigned case number 11-37348. The Court directed joint administration of the Elcoteq, Inc. case with the bankruptcy case of Elcoteq Holdings, Inc. on December 19, 2011, No. 11-37348, ECF No. 40, and consolidated the Elcoteq, Inc. involuntary and voluntary cases on January 26, 2012, No. 11-37348, ECF No. 60. Robert Milbank, Jr. was appointed as chapter 7 trustee (the "**Trustee**") for both Elcoteq, Inc. and Elcoteq Holdings, Inc.

While the Elcoteq bankruptcy cases were getting underway in Texas, PCE's employees in Mexico (the "**Workers**") sought to enforce labor claims against PCE through two separate proceedings governed by Mexican Labor Law.[1]

First, through their union (the "**Union**"), the Workers filed a notice of intent to strike against PCE with the Local Labor Board of Juarez, Mexico (the "**Labor Board**") on August 30, 2011. Defs.' Ex. 1. The grounds for the strike included failure to provide satisfactory uniforms and significant temporary suspensions of portions of the workforce. *Id.* The Labor Board approved the notice on the following day, Defs.' Ex. 2, and it was served on PCE in Juarez at 2:25 p.m. on August 31, 2011, Defs.' Ex. 3 (collectively, the "**Strike Summons**").[2] The documents associated with the Strike Summons name PCE and reference Philips as the prior owner of the PCE maquila, but none of those documents contain any reference to Elcoteq, Inc. or Elcoteq, Holdings, Inc.

Whether the Strike Summons acted to create a lien against the Assets or merely froze the Assets against certain types of transfers is a matter of some dispute between the parties. Regardless of the answer to that question, the parties agree that no transfers or relevant events occurred in connection with the Strike Summons after August 31, 2011. In fact, the Labor Board archived the Strike Summons' file on February 7, 2013 because neither party (the Workers nor PCE) had pursued the matter further. Defs.' Ex. 4.

---

[1] Labor law in Mexico is governed both by the Mexican Constitution and the Federal Labor Law. Constitución Política de los Estados Unidos Mexicanos [C.P.], *as amended*, Diario Oficial de la Federación [DO], 5 de Febrero de 1917 (Mex.); Ley Federal del Trabajo [LFT] [Federal Labor Law], *as amended*, Diario Oficial de la Federación [DO], 1931 (Mex.).

[2] The Strike Summons was assigned file number 6-02-11-H.

Second, the Workers filed a formal labor complaint (the "**Labor Lawsuit**") against PCE with the Labor Board on October 31, 2011.[3] Defs.' Ex. 5. The Labor Lawsuit named the Workers as plaintiffs and PCE and two Philips entities, Philips Mexicana, S.A. de C.V. and Philips Holding, S.A. de C.V., as defendants. Although PCE was served with process in the Labor Lawsuit, neither Philips entity was served and thus neither became a formal defendant in the Labor Lawsuit. *See* Defs.' Ex. 37 ¶ 17, at 10; Evidentiary Hr'g Tr., 36:7-11, Oct. 14, 2014, ECF No. 70 (test. of Cesar Ochoa). In the Labor Lawsuit, the Workers alleged that they had been laid off in three groups on October 21, 27, and 28, 2011, but had not been paid the full amount of severance pay and prior unpaid wages or benefits to which they were entitled.

As a result of the Labor Lawsuit, on November 4, 2011, a clerk of the Labor Board entered a "provisional embargo" in the amount of MXN $65,289,637.28 against the Assets (as detailed in a list and located at the PCE facility). Defs.' Ex. 6. Specifically, the provisional embargo purported to "designate movables owned by the defendant PCE Mexicana, S.A. de C.V." *Id.* On November 10, 2011, the Labor Board delivered a notice and summons to the PCE facility of a hearing on the Labor Lawsuit to take place on November 30, 2011. Defs.' Ex. 7. The Workers signed an agreement with a PCE representative to resolve the Labor Lawsuit through a USD $4,000,000 payment to be made to the Workers on December 2, 2011. Defs.' Ex. 8.

No payment was ever made, and, on December 6, 2011, a clerk for the Labor Board returned to the PCE facility to "declare a definitive embargo" of up to USD $4,000,000 against the Assets "at the domicile and under the responsibility of the defendant," PCE, for "definitive foreclosure." Defs.' Ex. 9. On December 7, 2011, notice of an auction of the Assets was placed at the local tax office and city hall. Defs.' Ex. 10. Pursuant to the notice, the auction was to be

---

[3] The Labor Lawsuit was assigned file number 2/11/3212.

conducted on December 8, 2011. When no bidders appeared, the Assets were awarded to the Workers as plaintiffs in the Labor Lawsuit. *Id.* The Labor Board entered a "legal invoice" on December 16, 2011, explaining that "the assets owned by the defendant were foreclosed on December 6, 2011, due to the default of the defendant," and declaring the Assets awarded to the Workers. Defs.' Ex. 11.

As with the Strike Summons, the Labor Lawsuit and associated documents never mention Elcoteq, Inc. or its ownership of the Assets.

Once the Workers took ownership of the Assets, they immediately sold them to Philips for USD $2,200,000 in accordance with the terms of a "promissory agreement" between Philips and the Workers executed on December 2, 2011. Pl.'s Ex. J. This agreement includes a recital that all parties were aware of Elcoteq, Inc.'s bankruptcy case. *Id.* § IV. It also acknowledges a separate strike proceeding commenced by the Workers' union against Philips that was to be terminated once Philips purchased the Assets. *Id.* § 6.1. On the same day that Philips executed the promissory agreement with the Workers, Philips executed a separate agreement with Tekmart International Inc. to sell it virtually all of the Assets Philips would acquire from the Workers for USD $1,200,000. Pl.'s Ex. K.

The parties quarrel over the full extent of the Trustee's knowledge about the Labor Board proceedings in Juarez involving the Assets. Regardless, there can be no dispute over whether the Trustee had general knowledge of some sort of labor proceeding in Juarez, Mexico against PCE in late 2011. Such references appear in various filings on the docket of the underlying Elcoteq, Inc. bankruptcy case, some of which were submitted as evidence by the parties. For example, the Statement of Financial Affairs filed in the Elcoteq, Inc. voluntary bankruptcy case on October 27, 2011, referenced the Juarez proceedings and alluded to a potential transfer of property. Defs.' Ex.

22 § 4, at 2. Moreover, the Trustee sought to retain the Jackson Walker L.L.P. law firm on December 2, 2011 as special counsel in part because of labor claims against assets located in Juarez and elsewhere in Mexico. Defs.' Ex. 23 ¶ 21, at 9.

## II.     PROCEDURAL HISTORY

The Trustee's original complaint, filed on January 30, 2014, pled avoidance and recovery claims against Philips under §§ 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code. Compl., ECF No. 1. While the Workers were the initial transferee of the Assets, the Trustee seeks to recover the value of the transferred Assets from Philips as a subsequent transferee under § 550. *Id.* ¶ 48-51, at 10-11.

Philips filed its motion to dismiss this adversary proceeding on March 20, 2014, Defs.' Mot. Dismiss, ECF No. 6, accompanied by a memorandum of law in support of its motion to dismiss, Defs.' Mem. L., ECF No. 7. In those documents, Philips explained that it sought to dismiss the entire adversary proceeding under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, to dismiss nearly all claims under Federal Rule of Civil Procedure 12(b)(6) as applied to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012. Philips Mem. L. 1-2, 9. The Trustee filed a response opposed to the Philips motion on April 30, 2014, Trustee's Resp. Opposed, ECF No. 24, also accompanied by a brief, Trustee's Br. Resp., ECF No. 25. Philips submitted a reply brief on June 24, 2014. Defs.' Reply, ECF No. 33.

The Trustee's motion seeking leave to amend the original complaint was filed on September 17, 2014, Trustee's Mot. Leave, ECF No. 44, to which he attached his proposed amended complaint, Proposed Am. Compl., ECF No. 44, Ex. A. Philips objected to the Trustee's motion for leave to amend on September 19, 2014. Defs.' Objection, ECF No. 51.

The parties presented legal argument on both motions at a hearing held on September 29, 2014. At the Court's request, the parties filed supplemental briefs on the issues of international comity and whether Philips was the proper party to defend an action by the Trustee to avoid any transfer related to the issuance of the Strike Summons. Defs.' Supp. Br. Int'l Comity, ECF No. 59; Trustee's Supp. Br. Comity, ECF No. 60; Trustee's Supp. Br. Liens, ECF No. 61; Defs.' Resp. Liens, ECF No. 64. Finally, the parties presented evidence to the Court limited to the question of jurisdiction involving international comity from October 14-16, 2014.

## III. SUBJECT MATTER JURISDICTION AND INTERNATIONAL COMITY

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges a court's jurisdiction over the subject matter of a dispute. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006). Facial challenges to subject matter jurisdiction are based on the insufficiency of the complaint alone, but a Rule 12(b)(1) challenge can also rest on undisputed facts or the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

When considering a motion to dismiss raising questions under both Rule 12(b)(1) and Rule 12(b)(6), a court must consider its jurisdiction before deciding whether the complaint properly stated a claim. *Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001). Furthermore, a lack of subject matter jurisdiction, or a decision not to exercise subject matter jurisdiction, would implicate the futility of allowing the plaintiff leave to amend the complaint. *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003). Accordingly, the Court first considers the arguments for dismissal as a matter of international comity brought under Rule 12(b)(1).

### A. Subject Matter Jurisdiction and Comity

Philips does not contest this Court's power to hear this adversary proceeding. As noted previously, the Trustee's original complaint brought avoidance claims under §§ 544, 545, 547,

548, and 549 of the Bankruptcy Code and sought recovery against Philips under § 550 of the Bankruptcy Code. The Trustee's proposed amended complaint seeks to add a claim for violation of the automatic stay. As Philips concedes, most of these claims arise under the Bankruptcy Code. Therefore, the district court has subject matter jurisdiction over the underlying bankruptcy cases and this adversary proceeding pursuant to 28 U.S.C. § 1334, and this Court has authority to hear avoidance proceedings pursuant to 28 U.S.C. § 157(a), (b)(1), (b)(2)(F), and (b)(2)(H) and the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc adopted in the Northern District of Texas on August 3, 1984. In arguments before this Court on this motion, Philips agreed that this Court has subject matter jurisdiction over these causes of action.

Nevertheless, Philips urges the Court not to exercise this jurisdiction as a matter of international comity to the Labor Board that, in the Labor Lawsuit, approved the foreclosure and auction of the Assets at issue in this adversary proceeding. Defs.' Supp. Br. Int'l Comity 11-12, ECF No. 59. International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). "[O]nce the parties have had an opportunity to present their cases fully and fairly before a court of competent jurisdiction, the results of the litigation process should be final." *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 593 (5th Cir. 2003). The party raising comity has the burden of proof. *Id.* at 594.

It is true that issues of international comity are raised in a variety of other procedural postures, which is unsurprising given the diverse situations to which that doctrine is applied. The Trustee argues that where the Court's subject matter jurisdiction is clear, a motion under Rule

12(b)(1) must be denied.  Trustee's Supp. Br. Comity 19, ECF No. 60.  But the relief Philips seeks here—a decision not to hear the merits of this adversary proceeding—would be the same if the Court did not have subject matter jurisdiction to hear the proceeding at all.  Other courts have considered dismissal on the basis of international comity in response to a Rule 12(b)(1) motion. *See, e.g.*, *Daewoo Motor America, Inc. v. General Motors Corp.*, 459 F.3d 1249 (2006).[4]  And other courts have noted that a Rule 12(b)(1) motion is a proper way to bring a request that a court decline to exercise its jurisdiction.  *See, e.g.*, *Kingsway Fin. Servs., Inc. v. Pricewaterhousecoopers, LLP.*, 420 F. Supp. 2d 228, 233 (S.D.N.Y. 2005) (holding that a motion for abstention requiring consideration of disputed facts was properly brought under Rule 12(b)(1)).  Therefore, this Court is satisfied that a Rule 12(b)(1) motion was an appropriate way for Philips to raise the issue of international comity in this adversary proceeding.

### B.  The International Transactions *Factors*

Thus, the question becomes, should this Court decline to exercise its jurisdiction as a matter of international comity to the decision of the Labor Board, as Philips requests?  This Court may exercise its discretion not to reexamine the merits of a foreign judgment "obtained under a system with procedures compatible with the requirements of due process of law."  *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 594 (5th Cir. 2003).  Courts in the Fifth Circuit apply a five factor test to determine whether to grant international comity:

---

[4] The *International Transactions* court considered international comity in the posture of a 12(b)(1) challenge to subject matter jurisdiction, as this Court does here.  *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 594 (5th Cir. 2003).  But the primary issue involving Rule 12(b)(1) in *International Transactions* was whether a foreign court's earlier ruling deprived the plaintiff of constitutional standing.

> Under principles of international comity, a foreign court's judgment on a matter is conclusive in a federal court when
>> (1) the foreign judgment was rendered by a court of competent jurisdiction, which had jurisdiction over the cause and the parties,
>> (2) the judgment is supported by due allegations and proof,
>> (3) the relevant parties had an opportunity to be heard,
>> (4) the foreign court follows procedural rules, and
>> (5) the foreign proceedings are stated in a clear and formal record.

*Id.*

The Trustee disputes whether Philips met its burden of proof on several of these factors. Trustee's Br. Resp. 20-22, ECF No. 25; Trustee's Supp. Br. Comity 17-18, ECF No. 60. Furthermore, this Court raised questions of its own at the hearing on September 29, 2014, about whether the Labor Board should properly be considered a "court" for the purposes of granting international comity.[5] This Court need not resolve such questions, however, because Philips has failed to meet its burden on the third factor: the Trustee did not have sufficient notice to provide him the opportunity to be heard before the Labor Board before the Assets of Elcoteq, Inc. were taken.

There is no requirement that the Mexican law of due process and notice match that of the United States before a federal court decides to defer to a Mexican court on the basis of international comity. *Int'l Transactions*, 347 F.3d at 594. The question is whether the Trustee received the "bare minimum requirements of notice" or whether a "reasonable method of notification was employed." *Id.* (quoting *Ma v. Cont'l Bank, N.A.*, 905 F.2d 1073, 1076 (7th Cir.1990); *Somportex, Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 443 (3d Cir.1971)). In *International*

---

[5] In Mexico, the Labor Board has exclusive power to adjudicate labor disputes such as the dispute between PCE and the Workers. Evidentiary Hr'g Tr. 36:14-22, Oct. 14, 2014, ECF No. 70 (test. of Cesar Ochoa). The Labor Board, comprised of three members, included one representative from each of the Workers, PCE, and the government. Defs.' Ex. 8 at 6. As relevant here, the record before the Court provides no reason to doubt the lawfulness of the proceedings before the Labor Board as a matter of Mexican Law.

*Transactions*, the appellate court reversed a dismissal on the basis of international comity where the district court improperly found that the plaintiff had the opportunity to be heard in Mexico. *Id.* at 590-91. Though the plaintiff had actual knowledge of the proceedings in Mexico and should have been more diligent in protecting its rights, there was no evidence before the district court of any actual notice of the specific proceeding in Mexico to which the district court had granted comity. *Id.* at 595-96.

Here, Philips has not carried its burden to prove that the Trustee had notice and an opportunity to be heard before the Labor Board in the Labor Lawsuit that resulted in foreclosure of the Assets of Elcoteq, Inc. This is so regardless of whether the Trustee had actual notice of the Labor Lawsuit.

As explained above, the Trustee admittedly knew about labor proceedings in Mexico involving the Juarez plant and the Workers. At the evidentiary hearing, the parties presented conflicting testimony about whether the Trustee received certain documents in Spanish relating to the Labor Board proceedings. But the proceedings of which the Trustee most clearly had notice related to the Strike Summons of August 31, 2011. The foreclosure and auction of the Assets in December, 2011, was a result of the Labor Lawsuit, not the Strike Summons. Notice of one is not notice of the other.

And even if this Court were to find that the Trustee had been given documents related to the Labor Lawsuit, no Labor Lawsuit documents reviewed by this Court would have been sufficient to give notice that Elcoteq, Inc.'s assets were subject to foreclosure and sale. No Labor Lawsuit document named Elcoteq, Inc. as a party or identified Elcoteq, Inc.'s property interests as subject to foreclosure. On the contrary, the provisional embargo that was issued as a result of the

Labor Lawsuit specifically refers to assets belonging to PCE. As Philips admits, none of the Assets at issue before the Labor Board belonged to PCE; rather, the Assets belonged to Elcoteq, Inc.

Because Philips has failed to meet its burden of proof on one of the five *International Transactions* factors, this Court cannot decline to hear the claims pled in this adversary proceeding on the basis of international comity.

C. *The Automatic Stay*

Even if Philips had satisfied every factor above, this Court would find it difficult to decline to exercise its jurisdiction over allegations of improper transactions involving property of a debtor's bankruptcy estate in violation of the automatic stay. Further explanation is required.

The filing of a bankruptcy case creates an estate which includes all property interests of the debtor, "wherever located and by whomever held." 11 U.S.C. § 541(a). Furthermore, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" is immediately and automatically stayed by operation of statute. 11 U.S.C. § 362. Because of its centrality to the purpose of bankruptcy, the automatic stay of § 362 of the Bankruptcy Code is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat. Bank v. N. J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503, (1986) (quotation marks omitted) (quoting legislative history from the enactment of the Bankruptcy Code). The automatic stay protects creditors as well as debtors by allowing for an equitable distribution of estate property. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 301 (5th Cir. 2005). Without the stay, creditors might seek to gain advantage by taking more from the estate than they are entitled. *Id.*

The "presumption against extraterritoriality" is a canon of construction against reading domestic law to apply outside our borders unless Congress clearly indicated otherwise. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). However, by including property of the

debtor "wherever located" in the bankruptcy estate, Congress explicitly indicated its intent for property located outside the territory of the United States to be considered property of the estate and thus protected by the automatic stay. *See Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996) (referring to legislative history and collecting cases). A bankruptcy court's powers over foreign property are carried out either through *in personam* jurisdiction over others with interests in such property or through the cooperation of foreign courts. *Sinatra v. Gucci (In re Gucci)*, 309 B.R. 679, 683-84 (Bankr. S.D.N.Y. 2004). As the *Gucci* court explained, when a party violates the stay and is subject to the personal jurisdiction of the bankruptcy court in the United States, that party can be liable for such act, even when the act involved property located elsewhere. *Id.*

Acts in violation of the stay are invalid when committed, regardless of the actor's knowledge of the stay and without court action to make them so. *Bustamante v. Cueva (In re Cueva)*, 371 F.3d 232, 236 (5th Cir. 2004). In the Fifth Circuit, such acts are regarded as voidable, not void, because the bankruptcy court can exercise its power under § 362(d) of the Bankruptcy Code to retroactively annul the stay and validate acts that would otherwise remain invalid.[6] *Jones v. Garvia (In re Jones)*, 63 F.3d 411, 413, 413 n.3 (5th Cir. 1995). But this is a distinction without a difference where, as here, no party has properly sought or obtained retroactive relief annulling the automatic stay.

---

[6] The Fifth Circuit has recognized the confusion caused by the use of the term "voidable" to describe acts in violation of the stay that are initially invalid subject to cure. *Jones v. Garcia (In re Jones)*, 63 F.3d 411, 413 n.3 (5th Cir. 1995). The Fifth Circuit carefully chose not to use the term "void" in this context, which it reserves for acts that cannot be subsequently ratified. *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989); *cf. Void*, Black's Law Dictionary (9th ed. 2009) ("Of no legal effect; null.") (5th ed., 1979). As the *Jones* court explained, "it is the effect of the stay *itself* which is voidable," valid initially yet subject to retroactive nullification. *Jones*, at 413 n.3; *cf. Voidable*, Black's Law Dictionary (9th ed. 2009) ("Valid until annulled").

These principles suggest that the Court should hear the merits of proceedings over which is has proper jurisdiction and which involve allegations of unauthorized transfers of property of the estate after the commencement of a bankruptcy case. Such transfers may be avoided under § 549 and their value recovered under § 550 of the Bankruptcy Code from the initial transferee or any mediate or immediate transferee. The Trustee has brought both such claims here, Compl., ECF. No. 1, and federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Moreover, if this Court grants leave to file an amended complaint, the Trustee intends to further allege willful acts to exercise control over property of the estate in violation of the automatic stay. These claims are brought against Philips, a party over which the Court has personal jurisdiction.

Yet by seeking dismissal here, Philips requests that this Court not reach the merits of any such claims on the basis of a decision in Mexico that considered neither the relevant acts taken by Philips nor applicable U.S. law, and to which neither Philips nor Elcoteq, Inc. were a party. Given the tight connection between these claims and this Court, such a dismissal would entirely shield Philips from defending against allegations of improper transactions with respect to property of the Elcoteq, Inc. bankruptcy estate. The deference and respect properly due to foreign courts under the international comity rubric does not extend so far.

For example, in *Daewoo Motor America, Inc. v. General Motors Corp.*, Daewoo America, the debtor in a bankruptcy case pending in the United States, filed a lawsuit in federal district court alleging, *inter alia*, that certain transfers were made in violation of the automatic stay and were avoidable under § 549 of the Bankruptcy Code. *Daewoo Motor America, Inc. v. General Motors Corp.* 459 F.3d 1249, 1265 n.7 (11th Cir. 2006) (Tjoflat, J., concurring). Those transfers occurred pursuant to a reorganization plan in the bankruptcy case of the Korean parent company of Daewoo

America, which was approved by the Korean court after the commencement of Daewoo America's bankruptcy case in the United States. *Id.* at 1251, 53-54. The Eleventh Circuit concluded that the district court did not abuse its discretion when it granted comity to the Korean bankruptcy court's approval of the parent company's reorganization plan in Korea, thus dismissing the lawsuit pending before it. *Id.* at 1257-59. But the Eleventh Circuit did so only after it was satisfied that the transactions "did not affect any property interest of Daewoo America and did not violate the automatic stay." *Id.* at 1257.

Philips may yet have defenses to the claims pled in this adversary proceeding, but it should be required to present those defenses in the normal course of litigation.

## IV.     FAILURE TO STATE A CLAIM

As noted previously, the Trustee brought avoidance claims under §§ 544, 545, 547, 548, and 549 and a claim for recovery under § 550 of the Bankruptcy Code in his original complaint. The Philips motion seeks dismissal of the §§ 544, 545, 547, and 548 claims under Federal Rule of Civil Procedure 12(b)(6), as made applicable here by Federal Rule of Bankruptcy Procedure 7012, for failure to state a claim on which relief can be granted.

On September 17, 2014, the Trustee filed his motion seeking leave to amend the complaint in this adversary proceeding. Trustee's Mot. Leave, ECF No. 44. In his proposed amended complaint the Trustee (1) drops his claims against Philips under §§ 544, 545, and 547 of the Bankruptcy Code, and (2) adds a claim against Philips for its alleged willful violation of the automatic stay.

Philips' Rule 12(b)(6) motion is directed to the sufficiency of the original complaint, not the proposed amended complaint. But, because the Trustee's motion for leave to amend, if granted, moots Philips' motion to dismiss the §§ 544, 545, and 547 claims, there is no need to

analyze their sufficiency in the original complaint as Philips does not oppose the Trustee's motion for leave to amend with respect to those claims.

Consequently, the only remaining issue raised by the Philips' Rule 12(b)(6) motion is whether the Trustee's original complaint properly states a claim for relief under § 548 of the Bankruptcy Code. For the reasons explained below, the Court concludes that it does not.

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations in original omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*) (internal quotation marks omitted). In the Fifth Circuit, "[d]ismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise his right to relief above the speculative level." *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012).

To plead a valid fraudulent transfer claim under § 548 of the Bankruptcy Code, the Trustee must allege: (1) a transfer of an interest in property, (2) made on or within the two years prior to the petition date, (3) for which the debtor received less than reasonably equivalent value, and (4) while the debtor was insolvent. 11 U.S.C. § 548. In his original complaint the Trustee alleges that the Strike Summons, executed on the involuntary petition date while Elcoteq, Inc.'s liabilities exceeded its assets, was not an exchange for reasonably equivalent value. Compl. ¶ 39, at 8. Contrary to the first element of a § 548 claim, the Trustee has argued that there was no prepetition transfer or fixing of a lien as a result of the issuance of the Strike Summons. *See* Compl. ¶ 14, at 4; Trustee's Br. Resp. ¶ 23, at 10-11, ECF. No. 25. As explained by the Trustee's counsel at the

hearing, this claim is pled in the alternative, as permitted under Federal Rule of Civil Procedure 8(d)(2) and made applicable here by Federal Rule of Bankruptcy Procedure 7008, in case the Court finds that a prepetition transfer occurred.

Section 550 of the Bankruptcy Code provides for recovery of property or its value when a transfer of the property is avoided pursuant to the Trustee's avoidance powers, including § 548. 11 U.S.C. § 550(a). The Trustee may only recover under § 550 from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." *Id.* The concepts of avoidance and recovery are tightly connected. As the Fifth Circuit explained, "[t]he fraudulent transfer injured the estate and § 550 ensures that the injury is redressed." *MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530, 534 (5th Cir. 2012).[7]

In its Rule 12(b)(6) motion, Philips raises two arguments: (1) that Elcoteq, Inc. received reasonably equivalent value for any property interest transferred by the Strike Summons (a factual dispute not subject to disposition in the context of a Rule 12(b)(6) motion), and (2) that even if the Trustee has properly pled the elements of a § 548 claim, Philips is not a party from whom the Trustee can recover under § 550. Defs.' Mem. L. 31-32, ECF No. 7.

From the Court's perspective, Philips is correct that the Trustee has failed to plead how Philips is a party from whom the Trustee can recover based upon the avoidance of some prepetition transfer that may have arisen from the issuance of the Strike Summons. As just explained, under § 550, the Trustee can only recover from the initial transferee, a subsequent transferee of the initial

---

[7] This is not to say that § 550 of the Bankruptcy Code is relevant to every fraudulent transfer claim. *See, e.g.*, *Paradigm Air Carriers, Inc. v. Texas Rangers Baseball Partners (In re Texas Rangers Baseball Partners)*, 498 B.R. 679, 706 (Bankr. N.D. Tex. 2013) (denying a motion to dismiss a claim for avoidance of a fraudulent transfer where no corresponding recovery claim under § 550 of the Bankruptcy Code was pled). Though § 550 of the Bankruptcy Code only applies to avoided transfers, § 548 allows for avoidance of both transfers and obligations. There is nothing to recover when an obligation is avoided as fraudulent.

transferee, or one for whom the transfer was made. 11 U.S.C. § 550(a). Philips is not alleged to be any of those persons.

The Trustee's counterargument rests on cases that have allowed an avoidance and recovery action to be brought against a subsequent transferee without first avoiding the transfer to the initial transferee in the same chain of transactions. *See* Trustee's Supp. Br. Liens ¶ 12, at 6-7, ECF No. 61 (citing *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 705 (11th Cir. 2005) (explaining the mere conduit rule); *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 480 B.R. 501, 520-23 (Bankr. S.D.N.Y. 2012) (allowing avoidance and recovery actions to proceed concurrently); *MC Asset Recovery LLC v. Commerzbank AG (In re Mirant Corp.)*, Case No. 03-046590, Adv. No. 05-04142, 2010 WL 8708772, at *35 (Bankr. N.D. Tex. Apr. 22, 2010) (applying the mere conduit rule); *Crafts Plus+, Inc. v. Foothill Capital Corp. (In re Crafts Plus+, Inc.)*, 220 B.R. 331, 335-38 (Bankr. W.D. Tex. 1998) (holding that not every beneficiary of a transfer must be joined in an avoidance and recovery action); *Kendall v. Sorani (In re Richmond Produce Co., Inc.)*, 195 B.R. 455, 463 (N.D. Cal. 1996) ("[O]nce the trustee proves that a transfer is avoidable under section 548, he may seek to recover against any transferee, initial or immediate, or an entity for whose benefit the transfer is made.")). However, none of the cases the Trustee has cited support the proposition that a trustee in bankruptcy may avoid a transfer in an entirely different chain of transactions without proceeding against any party in that chain.

On the contrary, independent chains of transfers involving the same property must be analyzed separately for the purposes of § 550 of the Bankruptcy Code. *See Cullen Center Bank & Trust v. Hensley (In re Criswell)*, 102 F.3d 1411, 1419-20 (5th Cir. 1997); *see also Gold v. United States (In re Laines)*, 352 B.R. 416, 417 (Bankr. E.D. Va. 2006) (explaining that defendants' contested liens were not adjudicated in a prior avoidance action because they were not parties to

that action). In *Criswell*, a transfer of property was held to be fraudulent in a separate proceeding from a preference action against a bank holding a judicial lien in the same property. *Id.* at 1412-13. Though the bank's judgment lien attached after the fraudulent transfer occurred and though the lien involved the same property, the bank was not entitled to defenses reserved for subsequent transferees by § 550 of the Bankruptcy Code. *Id.* at 1419.

Here, since it is undisputed that title to the Assets did not transfer to the Workers until December 2011 (a postpetition transfer the Trustee seeks to avoid under § 549), the only possible transfer that could have occurred by virtue of the issuance of the Strike Summons would be the creation of a prepetition lien in favor of the Workers on the Assets. However, there is no allegation in the original complaint that Philips was a subsequent or mediate transferee of any lien created by the Strike Summons or that Philips was the one for whom such a lien was created.

Thus, even assuming that the issuance of the Strike Summons had the effect of creating a lien on the Assets in favor of the Workers and that the creation of such a lien constituted a fraudulent transfer under § 548, the Trustee has failed to plead sufficient facts that would entitle him to recover the value of such a transfer from Philips and thus his claim fails as a matter of law. Accordingly, the Trustee's claim under § 548 as pled in the original complaint must be dismissed for his failure to state a claim upon which relief may be granted.

## V.    LEAVE TO AMEND THE COMPLAINT

In addition to the Philips' motion to dismiss on grounds of international comity and failure to state a claim, pending before the Court is the Trustee's motion for leave to amend the complaint. Trustee's Mot. Leave, ECF No. 44. As explained above, the proposed amended complaint drops claims under §§ 544, 545, and 547 of the Bankruptcy Code that Philips sought to dismiss under Rule 12(b)(6). The proposed amended complaint continues to assert claims under §§ 548, 549,

and 550 of the Bankruptcy Code, alters the factual allegations, and seeks to add a claim for willful violation of the automatic stay under § 105 and § 362 of the Bankruptcy Code.

There is no deadline for amendments in any scheduling order in force at any point in this adversary proceeding. Therefore, Federal Rule of Civil Procedure 15(a) governs this Court's consideration of the Trustee's motion, as applied here by Federal Rule of Bankruptcy Procedure 7015. Specifically, as more than 21 days had passed after the Trustee filed his original complaint before he sought to amend it, he may do so "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Rule 15(a) supports the general policy of the Federal Rules that litigation should test the merits of claims, not the technical skill of pleadings. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The rule "evinces a bias in favor of granting leave to amend," and the trial court will not withhold such leave without a "substantial reason." *Smith v. EMC Corp.*, 393 F.3d 590 (5th Cir. 2004) (internal quotation marks omitted). Courts consider five factors to determine whether to grant leave to amend: "(1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Id.*

Here, there is no allegation that the amendment was filed in bad faith or with a dilatory motive. No prior amendments were filed. Rather, Philips argues that the additional claim for violation of the automatic stay is futile and was filed after undue delay not attributable to the discovery of new facts. Defs.' Objection 3, ECF No. 51. Philips also claims it would be prejudiced by the amendment, and notes that the Trustee would not be harmed if the motion is not granted

because the claim for violation of the automatic stay could be asserted independent of this adversary at any time. *Id.*

Undue delay involves more than mere passage of time. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Lack of a reasonable explanation for a delay can make it undue. *Southmark Corp. v. Schulte Roth & Zabel*, 88 F.3d 311, 316 (5th Cir.1996). Here, however, the Trustee explained that discovery materials obtained in June gave rise to the need to amend, and the proposed amended complaint references additional material obtained through discovery. This Court finds the Trustee's explanation reasonable.

Although Philips will have to defend against the additional § 362 claim if the motion for leave is granted, that does not rise to the level of undue prejudice. Courts look for *substantial* prejudice to support denial of leave to amend on this factor. *See, e.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971) (finding undue prejudice because amendment would require "a virtual retrial of the issue of damages"); *Ross v. Houston Indep. Sch. Dist.*, 699 F.2d 218, 229 (5th Cir. 1983) (finding undue prejudice where the amendment would add 26 new parties and would require new discovery, new hearings, and more appeals); *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022 (5th. Cir. Unit A Nov. 1981) (affirming district court's denial of leave to amend the complaint on the day of trial where the new claim would "substantially alter" the case). Philips is not unduly prejudiced when the amendment seeks to add additional, similar claims, as the Trustee seeks to do here. *See, e.g.*, *Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1179 (5th Cir. 1987) (affirming district court in granting leave to amend a negligence claim shortly before trial to add a claim for strict liability); *Bamm, Inc. v. GAF Corp.*, 651 F.2d 389, 391 (5th Cir. 1981) (reversing the district court's denial of leave to amend to add fraud and negligence claims to a warranty claim). A claim for violation of the automatic stay goes hand in hand with a

claim for avoidance and recovery of unauthorized postpetition transfers under § 549 and § 550 of the Bankruptcy Code.  Furthermore, this adversary proceeding is in its infancy, as Philips has not yet filed an answer to the original complaint.

Finally, the Court is unpersuaded that amending the complaint to add a claim for willful violation of the automatic stay would be futile.  An amendment is futile if it would not survive a motion to dismiss for failure to state a claim.  *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003).  The Trustee's proposed amended complaint brings the automatic stay claim under the Court's civil contempt power, rooted in 11 U.S.C. § 105.[8]  *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997); *In re Adams*, 14-00580-NPO, 2014 WL 4187231, at *6 (Bankr. S.D. Miss. Aug. 21, 2014).  The Trustee's claim is futile unless it alleges intentional acts by Philips in violation of the automatic stay despite notice of the bankruptcy petition.  *All Trac Transp., Inc. v. Transp. Alliance Bank (In re All Trac Transp., Inc.)*, 306 B.R. 859, 874-75 (Bankr. N.D. Tex. 2004), *aff'd*, CIV. A. 3:04-CV-1759, 2005 WL 5012640 (N.D. Tex. July 28, 2005), *aff'd*, 223 F. App'x 299 (5th Cir. 2006) (explaining that because the stay is automatic by statute and does not require or forbid action by specific, named parties, courts require more than inadvertent violations to find contempt).  The proposed amendment meets that standard by, *inter alia*, alleging (and attaching) the promissory agreement between Philips and the Workers by which Philips agreed to purchase the Assets while acknowledging Elcoteq, Inc.'s pending bankruptcy case.  The Trustee also alleges that Philips knew that the Assets belonged to Elcoteq, Inc.  As discussed at length above, the automatic stay is very broad, enjoining "*any* act to

---

[8] The proposed amended complaint does not raise a claim under § 362(k) of the Bankruptcy Code.  Trustee's Mot. Leave, Ex. A ¶ 72, ECF. No. 44.  That subsection provides a private cause of action for individuals harmed by a violation of the automatic stay.  11 U.S.C. § 362(k).  Though the Fifth Circuit has not ruled on the issue, the majority of circuits, along with lower courts within the Fifth Circuit, hold that corporate debtors cannot recover under § 362(k). *See In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003).

obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3) (emphasis added). Surely executing a promissory agreement to purchase property of the estate sufficiently alleges an act in violation of the automatic stay.

However, the proposed amended complaint is futile with respect to the claim for avoidance under § 548, and the motion for leave to amend will be denied as to that claim. As discussed above, the original complaint fails to state a claim for avoidance under § 548 because, even assuming the Strike Summons is a prepetition transfer, the Trustee has not alleged facts supporting a claim for recovery against Philips arising from the Strike Summons. The amended complaint contains the same defect, and it would be futile to allow the Trustee to file an amended complaint containing a § 548 claim that is futile as a matter of law.[9]

Accordingly, the motion for leave to amend will be denied with respect to the avoidance claim brought under § 548, but leave to amend is granted with respect to all other proposed amendments to the complaint.

## VI. CONCLUSION

For the reasons explained in this memorandum opinion and order, the motion to dismiss for international comity to the Labor Board is denied. The motion to dismiss for failure to state a claim under 11 U.S.C. § 548 is granted, and the motion for leave to amend is denied in part as it relates to that claim. The Court grants the motion for leave to amend to file the amended complaint in all other respects.

---

[9] The proposed amended complaint is also defective as a matter of fact with respect to a claim avoiding a prepetition fraudulent transfer under § 548 of the Bankruptcy Code because it omits any factual allegations related to the Strike Summons. The proposed amended complaint uses the term "Pre-Petition Transfer," but there is no definition for that term in the Amended Complaint. By eliminating any reference to the Strike Summons, the proposed amended complaint contains no allegations of any transfer of property of the Debtor that occurred on or within two years before the petition date. In the absence of such an allegation, a claim under § 548 would be futile.

**SO ORDERED**.

### END OF MEMORANDUM OPINION AND ORDER ###